UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-mj-03653-Becerra

UNITED STATES OF AMERICA

v.

DEVON CHRISTIAN COOKE, and
DONAVAN CHRISTOPHER COOKE,

    **Defendants.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? ___ Yes   X   No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes   X   No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? ___ Yes   X   No

                         Respectfully submitted,

                         ARIANA FAJARDO ORSHAN
                         UNITED STATES ATTORNEY

BY: _____
        Michael E. Gilfarb
        Assistant United States Attorney
        Florida Bar No. 957836
        Dayron Silverio
        Assistant United States Attorney
        Florida Bar No. 112174
        99 N.E. 4th Street, 6th Floor
        Miami, Florida 33132-2111
        T. (305) 961-9009
        F. (305) 530-7976
        Dayron.Silverio@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>DEVON CHRISTIAN COOKE, and<br>DONAVAN CHRISTOPHER COOKE,<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 1:20-mj-03653-Becerra<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __September 15, 2020__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(a)(1) | Kidnapping |
| 18 U.S.C. § 2119(1) | Carjacking |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Boeman Wong, Special Agent, FBI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by

Date: Sept. 18, 2020

_____
*Judge's signature*

City and state:  Miami, Florida    Jacqueline Becerra, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Boeman Wong, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2008. I am currently assigned to the Miami Field Office South Florida Violent Crimes Task Force, which targets individuals involved in violent crime. As part of my duties, I investigate violent crimes including bank robberies, Hobbs Act robberies, kidnappings, extortions, and other violations of federal law. I received training on the proper investigative techniques for these violations, including the use of surveillance techniques and the application and execution of arrest and search warrants. I have conducted and assisted in fugitive and violent crime investigations, and have executed search warrants that have led to seizures of evidence related to violent crimes.

2. I submit there is probable cause to believe that, on or about September 15, 2020, Devon Christian Cooke ("DEVON") and Donavan Christopher Cooke ("DONAVAN") did willfully and unlawfully seize, confine, inveigle, kidnap, abduct, and carry away, any person, that is, VICTIM 1, and did hold that person for reward and otherwise, that is, for money, and did use any means, facility, and instrumentality of interstate commerce while committing and in furtherance of the commission of the offense, in violation of 18 U.S.C. § 1201(a)(1) (kidnapping); and did with the intent to cause death and serious bodily harm, did take a motor vehicle that had been transported, shipped, and received in interstate and foreign commerce, that is, a 2014 Mercedes Benz,[1] from the person and

---

[1] The 2014 Mercedes Benz belongs to WITNESS 1, is registered to an individual believed to be WITNESS 1's father, and is referred to throughout this affidavit interchangeably as WITNESS 1's vehicle/car or the Mercedes Benz. A database search revealed that the 2014 Mercedes Benz was manufactured outside of Florida.

1

presence of another, that is VICTIM 1, by force and violence, and by intimidation, in violation of 18 U.S.C. § 2119(1) (carjacking).

3. The statements contained in this affidavit are based upon my own personal knowledge as well as information provided by other individuals, including other law enforcement officials, and my review of records obtained during the course of this investigation. I have not included in this affidavit each and every fact and circumstance known to me, but only the facts and circumstances sufficient to establish probable cause for the issuance of the requested search warrant.

## PROBABLE CAUSE

**A.     VICTIM 1 contacted police on or about September 15, 2020.**

4. On the afternoon of September 15, 2020, VICTIM 1 approached an off-duty law enforcement officer[2] stationed near a credit union in Miami-Dade County. VICTIM 1, who was bloody and injured, reported to the off-duty officer that he had been the victim of a kidnapping, and that he had just escaped his captors.

5. As he related this information, VICTIM 1 pointed to a black, four-door vehicle across the street as the vehicle from which he had escaped. The off-duty officer looked towards the parking lot of a commercial plaza across the street and saw a black, four-door vehicle leave the parking lot.

6. WITNESS 1 also approached the off-duty officer. WITNESS 1 is VICTIM 1's significant other. According to VICTIM 1, DEVON and DONAVAN forced VICTIM 1 to contact WITNESS 1 earlier that day to procure a ransom for his release under the threat that, without payment, they would kill him. VICTIM 1 contacted WITNESS 1 and instructed WITNESS 1 to gather money VICTIM 1 had at his residence and to meet at a commercial establishment in a commercial plaza,

---

[2] The off-duty officer was in uniform and had a body worn camera, which he turned on during his interaction with VICTIM 1.

2

located in the vicinity of 20717 NW 2nd Avenue, Miami Gardens, Florida, in Miami-Dade County (the "meet location").

7. VICTIM 1 identified his assailants as brothers. VICTIM 1 specifically named DEVON, who VICTIM 1 explained is on house arrest for murder. In fact, law enforcement subsequently verified DEVON was released from custody and on house arrest pending trial in a Florida state case in which he has been charged with murder.

8. In subsequent interviews, VICTIM 1 explained that DEVON and DONAVAN are brothers known to him from prior interactions, and that he met them through social media.

9. VICTIM 1 also said there was a third unidentified person, SUBJECT 3, who drove him in the black, four-door vehicle to the meet location.

10. Below, I recount VICTIM 1's kidnapping as he described it. I have also included, where appropriate, information obtained by law enforcement corroborating VICTIM 1's account, though, as already explained, I have not included all information known to me at this time.[3] Furthermore, I have included information obtained as a result of the execution of a Search Warrant, Case No. 20-mj-03634-BECERRA, on or about September 17, 2020.

**B. VICTIM 1 went to the residence shared by DEVON and DONAVAN.**

11. On or about September 15, 2020, VICTIM 1 drove WITNESS 1's Mercedes Benz to a residence shared by DEVON and DONAVAN (the "residence") to meet with DEVON to collect money VICTIM 1 claims to have previously loaned to DEVON.

---

[3] VICTIM 1 is currently on pre-trial release in connection with Florida Case No. 200044782CF10A. VICTIM 1 has also previously been investigated by local police in connection with an incident in which VICTIM 1 called the police claiming that another person had threatened him. At the scene, the other person denied VICTIM 1's allegations and claimed that VICTIM 1 had defraud him. Local police closed the matter without a finding of fact as to the claims of each party.

3

12. After VICTIM 1 arrived at the residence, DEVON and DONAVAN forcibly took VICTIM 1's car key from VICTIM 1's care, custody, and control, beat and choked him, and physically removed VICTIM 1 from the vehicle.

**C.    DEVON and DONAVAN forcibly held VICTIM 1 against his will.**

13. DEVON and DONAVAN continued beating and choking VICTIM 1 in front of the residence. As VICTIM 1 was being subdued, DEVON used the car key to enter WITNESS 1's vehicle, which was parked on the street in front of the residence, drove it into the driveway, and closed the front gate at the residence.

14. DEVON and DONAVAN then forced VICTIM 1 to the back of the residence, where they bound VICTIM 1 to a chair, wrapped his arms and legs with duct tape, and held VICTIM 1 against his will.

15. DEVON and DONAVAN also placed a dog leash around VICTIM 1's neck and used the dog leash to choke VICTIM 1 until he became unconscious.

16. When VICTIM 1 regained consciousness, DEVON and DONAVAN repeatedly beat VICTIM 1 with their bare hands and with an assault rifle. Additionally, DEVON and DONAVAN also used a knife to stab VICTIM 1's face and cut VICTIM 1's toes several times.

17. Law enforcement observed consistent physical injuries to VICTIM 1's head and face, cut marks on his face, and lacerations on his toes.

**D.    DEVON and DONAVAN forced VICTIM 1 to use his wireless cell phone to contact WITNESS 1 to procure a release payment.**

18. VICTIM 1 pleaded with DEVON and DONAVAN to release him.

19. DEVON or DONAVAN told VICTIM 1 that they saw VICTIM 1 post "stacks" on his Instagram account, and that they believed VICTIM 1 had money. In my training and experience, "stacks" commonly refers to stacks of cash.

20. DEVON and DONAVAN also instructed VICTIM 1 to use his wireless cell phone to contact WITNESS 1 to bring them money for his release, and that they would kill him if he deviated from their directions.

21. While DEVON and DONAVAN held a gun to VICTIM 1's head, and under the direction of DEVON and DONAVAN, VICTIM 1 used his wireless cell phone to contact WITNESS 1. VICTIM 1 instructed WITNESS 1 to collect all of the money VICTIM 1 had in his room, VICTIM 1's Rolex watch, and VICTIM 1's chain jewelry, and place the items in a bag and bring all of the items to the meet location. VICTIM 1 told WITNESS 1 the money was needed to pay a jeweler.

22. Law enforcement later obtained WITNESS 1's wireless cell phone. WITNESS 1 consented to law enforcement's search of his or her cell phone. A preliminary review of WITNESS 1's cell phone's text message history revealed the following text message exchange between WITNESS 1's cell phone and VICTIM 1's cell phone number:

   a. At approximately 11:46 a.m., WITNESS 1 received a message from VICTIM 1: "Can get 60k now Get it now"

   b. WITNESS 1: "Where?"

   c. VICTIM 1: "Tell me when you have it on you Take a pic"

   d. WITNESS 1: "!! Huh??"

   e. VICTIM 1: "I need to give Jacob 100k"

   f. WITNESS 1: [emoji face][4]

   g. VICTIM 1: "How much we got"

   h. WITNESS 1 : "Don't you have 75k"

   i. VICTIM 1: "Yea but I need a hundred , sorry in a office I can only text"

---

[4] Based on my research, the emoji is referred to as a "surprised face emoji."

5

    j. WITNESS 1 : "Damn you gon spend all your money jewelry ?  But i don't understand what you want me to do bae"

    k. VICTIM 1: "Get 75k Can you bring it to me"

    l. WITNESS 1 : "Your downstairs?  Your going to the jeweler today?"

    m. VICTIM 1: "Yes , imma have someone pick it up for me"

    n. WITNESS 1: "Why don't you come get it? & me!  Your going all the way to your jeweler?  So get all the money here?"

    o. VICTIM 1: "Yea , get the money ready baby   Baby you dry"

23.   A preliminary review of WITNESS 1's cell phone call history revealed three incoming calls from VICTIM 1's cell phone number between about 1:11 p.m. and about 1:24 p.m. Those times are consistent with the approximate time frame during which VICTIM 1 says he was being held by DEVON and DONAVAN. The time of that last call, as explained below, is also consistent with security footage from the meet location showing WITNESS 1 on his or her phone at approximately 1:24 p.m.

**E.   SUBJECT 3 used a wireless cell phone to communicate with unknown individuals, suspected to be DEVON and DONAVAN, about the status of the kidnapping, while transporting VICTIM 1.**

24.   At some point, SUBJECT 3, who appeared to be a friend of DEVON and DONAVAN, arrived at the residence. SUBJECT 3 told VICTIM 1 that he would drive VICTIM 1 to meet with WITNESS 1 to get the money. SUBJECT 3 threatened VICTIM 1 by telling him that SUBJECT 3 had already killed seven people in the past, and if VICTIM 1 did not do exactly what SUBJECT 3 said, he would kill him, too.

25.   VICTIM 1 was placed in the aforementioned black four-door vehicle, suspected by law enforcement of being a Jaguar, which was in the driveway of the residence. The duct tape was removed from VICTIM 1's legs. SUBJECT 3 got into the driver's seat of the vehicle. While holding a gun, SUBJECT 3 told VICTIM 1 that they were going to meet WITNESS 1 to get all of the money.

26. VICTIM 1 believes that DEVON and DONAVAN stayed in the residence as SUBJECT 3 drove him away from the residence to the meet location.

27. As SUBJECT 3 and VICTIM 1 approached the meet location, SUBJECT 3 used a wireless cell phone to communicate with unknown individuals, suspected to be DEVON and DONAVAN, to let them know that SUBJECT 3 and VICTIM 1 were arriving or had arrived at the meet location, where they were supposed to obtain the money from WITNESS 1.

**F.     VICTIM 1 escaped as SUBJECT 3 secured payment from WITNESS 1.**

28. When SUBJECT 3 and VICTIM 1 arrived at the meet location, WITNESS 1 was already there. SUBJECT 3 exited the vehicle. When SUBJECT 3 stepped out of the vehicle, VICTIM 1 also exited the vehicle and ran away to escape from SUBJECT 3.

29. According to WITNESS 1, while waiting at the meet location, a black vehicle pulled up and VICTIM 1 exited from the front passenger seat. As VICTIM 1 exited the vehicle, VICTIM 1 signaled to WITNESS 1 by sliding his hand across his neck as if to indicate to cancel. SUBJECT 3 exited the vehicle and attempted to take a bag WITNESS 1 was carrying, and which contained the money WITNESS 1 had brought at VICTIM 1's request. WITNESS 1 attempted to prevent SUBJECT 3 from taking the bag. SUBJECT 3 made a remark that he had "it" on him, which WITNESS 1 understood to mean that SUBJECT 3 was in possession of a firearm. WITNESS 1 released the bag. SUBJECT 3 then took possession of it and fled in the same vehicle.

30. Law enforcement obtained security footage depicting the above incident. The video shows WITNESS 1 at the meet location at about 1:24 p.m. WITNESS 1 appears to be holding a phone to his or her ear, as if on a phone call, but later stops.

31. At approximately 1:27 p.m., a black, four-door vehicle, believed to be a Jaguar, is seen driving into view and parking directly in front of WITNESS 1. Once parked, and while partially

obscured from view, SUBJECT 3 is seen approaching WITNESS 1, and at about the same time, VICTIM 1 is seen running away from where the vehicle was parked.

32. It was shortly after VICTIM 1's escape from the black, four-door vehicle that VICTIM 1 made contact with the off-duty police officer, as described above.

**G.    The residence and black Jaguar sedan.**

33. According to the Florida Department of Highway Safety and Motor Vehicles database, the residence is DEVON and DONAVAN's registered address.

34. As previously explained, DEVON is currently on pre-trial release on a pending state murder prosecution. Miami-Dade Corrections House Arrest further confirmed that the residence is the home address for DEVON and DONAVAN. As part of his pre-trial release, DEVON has an electronic monitoring device attached to his person. According to Miami-Dade Corrections House Arrest, DEVON's electronic monitoring device "pinged" from the residence all day on or about September 15, 2020, indicating that DEVON was located at the residence, consistent with the account of VICTIM 1.

35. VICTIM 1 described the residence where he or she was held as having a black gate and visible security cameras.

36. Law enforcement conducted physical surveillance of the residence on or about September 15 and 16, 2020. Law enforcement observed that the residence had a black gate and security cameras in the exterior, consistent with VICTIM 1's description.

37. Law enforcement have not observed WITNESS 1's vehicle at the residence.

38. Law enforcement did, however, observe a Jaguar sedan at the residence on or about September 16, 2020. Specifically, law enforcement observed a black, four-door Jaguar sedan at the residence that resembled the black, four-door vehicle depicted, by the security footage, at the meet location.

39. A Florida Department of Highway Safety and Motor Vehicles database search did not reveal a Jaguar registered to DEVON, DONAVAN, or their mother. A database search on CLEAR has revealed a Jaguar registered to DONAVAN.

**H. Execution of the Search Warrant, Case No. 20-mj-03634-BECERRA.**

40. On or about September 17, 2020, law enforcement executed the above-referenced Search Warrant, Case No. 20-mj-03634-BECERRA, at the residence.

41. DEVON, DONAVAN, their mother, and two females (one of whom I refer to as WITNESS 2, below) were present at the residence.

42. The search of the residence yielded various items, including:

   a. a dog collar;

   b. duct tape;

   c. WITNESS 1's identification card;

   d. ammunition; and

   e. a bag containing U.S. currency.

43. DEVON and DONAVAN agreed to be transported to the FBI Miami Field Office for interviewing.

**I. Statements by WITNESS 2.**

44. On or about September 17, 2020, law enforcement interviewed WITNESS 2.

45. On or about September 15, 2020, WITNESS 2 saw DEVON and DONAVAN wrestle with VICTIM 1 on the ground in front of residence. Later on, at various times throughout that day, WITNESS 2 saw VICTIM 1 tied up at the back of residence and saw DEVON and DONAVAN repeatedly beat VICTIM 1 with their bare hands and with a wooden stick. During these beatings, WITNESS 2 heard VICTIM 1 plead with DEVON and DONAVAN, "Please don't kill me. Please

don't kill me. Call my girlfriend." At one point, WITNESS 2 heard DONAVAN say in effect, "We're not going to kill you. Just give me my stuff."

46.   DONAVAN provided WITNESS 2 with the car key to WITNESS 1's vehicle and instructed her to drive the vehicle away from the residence. WITNESS 2 complied with DONAVAN's instruction and drove the vehicle away from the driveway of the residence to a cemetery in northwest Miami-Dade County.

47.   Law enforcement later located WITNESS 1's Mercedes Benz near the location described by WITNESS 2.

48.   At one point, WITNESS 2 saw an unidentified black male, who law enforcement believe is SUBJECT 3, at the residence with DEVON, DONAVAN, and VICTIM 1. WITNESS 2 confirmed seeing DEVON, DONAVAN, and SUBJECT 3 place VICTIM 1 in DONAVAN's black Jaguar sedan. Although WITNESS 2 did not see who drove the black Jaguar sedan away, she recalled seeing DEVON and DONAVAN at the residence after SUBJECT 3, VICTIM 1, and the black Jaguar sedan were no longer at the residence.

**J.   The black Jaguar sedan.**

49.   According to WITNESS 2, DONAVAN provided her with the keys to the black Jaguar sedan on or about September 16, 2020. DONAVAN requested that WITNESS 2 take the black Jaguar sedan to her residence located in Miami-Dade County, Florida.

50.   WITNESS 2 complied with DONAVAN's request and drove the black Jaguar sedan to her residence on or about September 16, 2020.

51.   Based on the information provided by WITNESS 2, on September or about 17, 2020, law enforcement located a black Jaguar sedan, with no tag affixed, at WITNESS 2's residence. WITNESS 2 confirmed that the vehicle is the same black Jaguar sedan that she was told to move, and that it belonged to DONAVAN.

52. WITNESS 2 provided law enforcement with the keys to the black Jaguar sedan and WITNESS 1's Mercedes Benz.

53. Law enforcement towed the black Jaguar sedan to the FBI Miami Field Office pending the issuance of a search warrant.

### K. Statements by DONAVAN.

54. Law enforcement interviewed DONAVAN on or about September 17, 2020, where, post-*Miranda*, he stated that VICTIM 1 had stolen money[5] from him and his brother prior to September 15, 2020. DONAVAN claimed that VICTIM 1 then contacted either him or his brother via cell phone on or about September 15, 2020, and that they made arrangements for VICTIM 1 to come to the residence, where the brothers were planning to beat VICTIM 1.

55. DONAVAN also admitted:

   a. that, as VICTIM 1 sat in the Mercedes Benz, DEVON took VICTIM 1's car key away;

   b. that he pulled VICTIM 1 out of the Mercedes Benz;

   c. that, using VICTIM 1's car key, DEVON moved the car into the residence;

   d. that he bound VICTIM 1 with duct tape and a dog collar, and beat VICTIM 1 such that at one point he had to take a respite before resuming the beating[6];

   e. that he and DEVON demanded their money back from VICTIM 1;

   f. that VICTIM 1 offered to call WITNESS 1 to get DEVON and DONOVAN'S money;

   g. that he and DEVON agreed to let VICTIM 1 contact WITNESS 1 using VICTIM 1's wireless cell phone;

---

[5] DONAVAN said that the money, unbeknownst to VICTIM 1, was counterfeit.
[6] DONAVAN denied that he or his brother used a firearm to strike VICTIM 1.

    h.  that he and DEVON eventually got in contact with SUBJECT 3, who later arrived at the residence;

    i.  that VICTIM 1 was loaded onto the black Jaguar sedan, which SUBJECT 3 used to drive to the planned meet location;

    j.  that he and DEVON stayed behind at the residence;

    k.  that, later, SUBJECT 3 contacted DEVON or DONOVAN via cell phone to confirm that SUBJECT 3 had obtained the money;

    l.  that SUBJECT 3 returned and gave them approximately $20,000[7]; and

    m.  that DONAVAN instructed someone he would not name to get rid of WITNESS 1's Mercedes Benz.

**L.**    **Arrest of DEVON and DONAVAN.**

56.    Law enforcement arrested DEVON and DONAVAN on or about September 17, 2020.

[INTENTIONALLY LEFT BLANK]

---

[7] According to DONAVAN, he and his brother had already spent the entire $20,000 by the time he was interviewed, and he stated that any other money found in the residence was not related to the kidnapping.

## CONCLUSION

57. Based on the foregoing, there is probable cause to believe that, on or about September 15, 2020, Devon Christian Cooke ("DEVON") and Donavan Christopher Cooke ("DONAVAN") did willfully and unlawfully seize, confine, inveigle, kidnap, abduct, and carry away, any person, that is, VICTIM 1, and did hold that person for reward and otherwise, that is, for money, and did use any means, facility, and instrumentality of interstate commerce while committing and in furtherance of the commission of the offense, in violation of 18 U.S.C. § 1201(a)(1) (kidnapping); and did with the intent to cause death and serious bodily harm, did take a motor vehicle that had been transported, shipped, and received in interstate and foreign commerce, that is, a 2014 Mercedes Benz, from the person and presence of another, that is VICTIM 1, by force and violence, and by intimidation, in violation of 18 U.S.C. § 2119(1).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
Boeman Wong, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by:
Telephone
(specify reliable electronic means).

Date: _____Sept. 18, 2020_____

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 1:20-mj-03653-Becerra

### BOND RECOMMENDATION

DEFENDANT: DEVON CHRISTIAN COOKE

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Dayron Silverio

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   Boeman Wong (FBI)
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 1:20-mj-03653-Becerra

### BOND RECOMMENDATION

DEFENDANT: DONAVAN CHRISTOPHER COOKE

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Dayron Silverio

Last Known Address: _____

What Facility: _____

Agent(s): Boeman Wong (FBI)
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE) (**OTHER**)